PAUL SEGLIE, PROSECUTOR, v. HENRY ACKERMAN ET AL., DEFENDANTS.

Argued March 10, 1917—Decided April 2, 1917.

1. A petition for a recount, stating that the petitioner has reason to believe that an error has been made by various boards of election sufficient to change the result of the election and that the written return in one district varied from the report in figures, is sufficient to properly invoke the jurisdiction of the Supreme Court to make an order for a recount under section 159 of the Election law.

2. The granting of an application for a recount under section 159 of the Election law is not dependent upon the final result as declared by the board of county canvassers, and may be made before such result is officially determined.

3. It is not necessary to the validity of a recount that the justice of the Supreme Court, making the order, be actually present and presiding at the recount. The statutory mandate that the recount shall be under the direction of the justice simply puts a recount under his judicial control or direction, which direction may be properly exercised by the justice out of the presence of the board by an order, in writing, or verbally in the presence of the board.

4. The power conferred by statute upon a justice of the Supreme Court to grant a recount to be had under his direction is not limited in its exercise by him in his individual capacity as such justice, but upon the judicial office, irrespective of the individual invested therewith.

On *certiorari.*

At a general election held in Hudson county on November 7th, 1916, the prosecutor and Henry Ackerman, the defendant, were opposing candidates for the office of boulevard commissioner.

The county board of elections, having canvassed the vote, declared on December 4th, 1916, that the prosecutor had a majority of twenty-two votes over the defendant Ackerman, and issued to the prosecutor a certificate of election as boulevard commissioner.

It appears that within ten days after election, to wit, on the 17th day of November, the defendant Ackerman presented a verified petition to Mr. Justice Swayze, the presiding justice of the Hudson County Circuit, for a recount of the votes cast for boulevard commissioner, in whole or in part, as such justice might determine. The basis of the petitioner's application is set out as follows: "Your petitioner further shows that he has reason to believe that an error has been made by various district boards of election of said county in counting and declaring the vote of said election, whereby the result of such election has been changed: and further shows that in the return of the elections filed by the board of registry and election of the first district of the second ward of the city of Bayonne, according to the written return of the votes cast for one Paul Seglie, he received one hundred and twenty-seven votes, while according to the statement of said vote expressed in figures he received one hundred and forty-seven votes."

Upon this petition the Supreme Court justice, on December 1st, 1916, made an order for a recount. The counting of the ballots occupied a long time and extended beyond the 19th day of January, 1917. The term of Mr. Justice Swayze expired on January 19th, 1917. He was reappointed on

January 22d, 1917. Several sessions of the board of elections 'were held after January 19th, 1917, at which a considerable number of ballots were counted by the board. The justice, subsequent to his appointment, also passed upon disputed ballots held by the board for his decision. On the recount, Ackerman, the defendant, appeared to have a majority of one hundred and four votes over the vote received by the prosecutor. This result was certified by the board of elections to Mr. Justice Swayze, whereupon the justice, on February 13th, 1917, made an order revoking the prosecutor's certificate of election and issued in place thereof a certificate of election to the defendant Ackerman. The prosecutor, on this *certiorari,* challenges the jurisdiction of the Supreme Court justice to revoke his certificate of election.

Before Justices Swayze, Minturn and Kalisch.

For the prosecutor, *Aaron A. Melniker, J. Emil Walscheid* and *George McEwan.*

For the defendant, *Gilbert Collins* and *Richard Doherty.*

The opinion of the court was delivered by

Kalisch, J. The first ground advanced by the prosecutor and upon which he bases the assertion that the justice of the Supreme Court lacked jurisdiction to entertain the application for a recount, is that the petition upon which the order for a recount was made did not comply with section 159 of the Election law, in that it failed to set out sufficient reasons for a recount within the meaning of that section. The alleged particular defect in the petition pointed out by the prosecutor is that the petition contains no facts upon which the petitioner based his belief. A similar objection was taken on a petition for a recount in *Kearns* v. *Edwards,* 28 *Atl. Rep.* 723. In that case the petition set out that the petitioner had good reason to believe, and did believe, that errors had been made in several boards of election within the district in counting the votes, whereby the

result of the election had been changed, &c. The defendant objected that the petition stated no facts upon which the petitioner based his belief, and showed no grounds for believing any error had been made. Mr. Justice Depue held the petition to be sufficient. The like objection was made against the petitioner for a recount under section 159 of the Election law in *Carson v. Scully et al.*, 89 *N. J. L.* 458, and the court, following the ruling in Kearns *v.* Edwards, held the petition to be sufficient. The court in *Carson* v. *Scully et al., supra* (at *p.* 467), makes the observation that the legislature made no provision in section 159 as to the manner in which an application for a recount shall be presented. The invariable practice has been to make the application for a recount, in writing, in the form of a petition addressed and presented to a justice of the Supreme Court, which we deem good practice and should be adhered to. We are also of the view that in the present case the facts set out in the petition were sufficient to properly invoke the jurisdiction of the Supreme Court justice to make the order for a recount under section 159.

Next, the prosecutor attacks the validity of the order for the recount upon the ground that the order was made before any result of the election had been officially declared.

The statute permits an application for a recount to be made at any time within ten days after the election. Such application may be made the very next day. For it is to be observed that section 159 permits an application for a recount by any candidate at any election who has reason to believe that an error has been made by any board of elections or of canvassers in counting the votes or declaring the vote of such election, &c.

It is, therefore, plain that section 159 provides for four classes of cases in which such recount may be applied for, viz.: (1) Where the error has been made by the district board of election in counting the vote. (2) Where the error has been made by such board in declaring the result. (3) Where the error has been made by the county board of elections, which constitutes the board of county canvassers, in

counting the vote. (4) Where the error has been made by such board in declaring the result.

The wisdom of this classification becomes strikingly apparent in the light of other provisions of the Election law to which we now turn for consideration. Section 103 provides that the county board of canvassers shall convene "on the Monday next after any such election," which is the sixth day after election. Section 105 provides that if a major part of such board shall not attend on that day, or if at that time the statements of the result of such election from every election district in such county shall not be produced, the board shall adjourn to some convenient hour the next day; and at the hour to which such adjournment shall have been ordered, the member or members of the board then present may proceed to canvass the vote, or may again adjourn for a period not exceeding three days, at which time the member or members of the board then present shall proceed to canvass the vote. Thus, it is observable that a situation might arise where a board of canvassers meet on the Monday next after the election, adjourn to Tuesday, and adjourn again to Friday, full ten days after election. It is also within the range of probability that the board might declare the result of the election on that day too late for an application for a recount to be made under section 159, which section requires that the application shall be made within ten days after the election, which limitation as to the time in which to make such application has been held to be mandatory by Mr. Justice Minturn in the *Van Noort Case,* 85 *Atl. Rep.* 813.

The legislature in order to make an application for a recount efficacious, and to prevent the prime object of the act from being circumvented by improper motives, very wisely refrained from making the granting of such application dependent upon the final result as declared by the board of county canvassers.

These views lead to the conclusion that the application for a recount and the order thereon were properly made.

Another objection urged by counsel for the prosecutor against the validity of the proceedings under review, is that the ballots were not recounted under the direction of the Supreme Court justice, in that the justice was not present, presiding at the recount. This objection is obviously the offspring of a misapprehension of what is meant by the statutory authorization of a justice of the Supreme Court to order and cause a recount to be publicly made under his direction by the county board of elections. Counsel for the prosecutor argue that this language implies that the recount should be made in the presence of the justice of the Supreme Court. But that is clearly not the general sense of the language used. What the language imports, obviously, is that the board in making the recount shall be subject to the direction of the justice. The statutory mandate that the recount shall be under the direction of the justice, simply puts a recount under his judicial control or direction. This direction may be properly exercised by the justice out of the presence of the board by an order, in writing, or verbally in the presence of the board. The statute does not require the presence of the justice during the progress of the recount. The settled practice is for the board of elections, in the absence of the justice, to count the ballots that they can agree upon by a majority vote, and as to those ballots that they cannot agree upon to count, by a majority vote, to lay them aside and refer them to the justice for his decision. This was the practice pursued in the present case and was proper.

Lastly, it is claimed by counsel for the prosecutor that the justice was without any jurisdiction to revoke the certificate of election granted by the county board of election to the prosecutor, and to issue in its place and stead a certificate of election to the defendant Ackerman, because of the fact that during the progress of the recount the term of office of the justice had expired, and an interval of two or three days had elapsed before the justice was reappointed, and it is on this situation that counsel bases the argument that the recount had during that interval was not, by force of the

circumstances mentioned, under the direction of a justice of the Supreme Court, as required by the statute, and that the vitality of the recount was extinguished simultaneously with the expiration of the term of office of the justice.

The fallacy of this position, which is apparent, arises from an unwarranted assumption, by counsel for prosecutor, that the power conferred upon the justice of the Supreme Court by the statute vests in him in his individual and not official capacity, and that, therefore, the life of the order and directions given under it became extinct when the official term of the justice, who made the order, expires.

Carrying out this assumption to its legitimate conclusion, it follows that where such justice resigns or dies during a recount or after it is concluded, and before any further action is taken to give proper effect to the recount, the entire proceedings taken become a nullity. As the applicant for a recount is barred from making a new application, under the statute, by reason of the limitation of time within which such application must be made, the applicant not only loses the benefit of the statute by having a recount of the votes, in which the general public has also an interest, in that the votes cast for a candidate shall be given their proper effect, but he is also saddled with the expense of such recount, which, in largely populated counties like Essex and Hudson, is very great, and, therefore, is more or less a factor to be considered in giving a reasonable construction to the act.

The duties conferred upon the justice by the statute are both of a judicial and ministerial nature. The order that he makes for a recount is a judicial order, and has the like force and effect as any other judicial order made by a court of competent jurisdiction, and that is, that the life of the order remains intact, unless the order be revoked or reversed by competent authority, until the purpose of the order has been fully achieved. The order, in this case, therefore, was in force during the recount made by the board on the days intervening between the expiration of the official term of the justice and his reappointment.

We are unable to perceive any force to the contention of counsel for the prosecutor that the power conferred by statute upon the justice to grant a recount, to be had under the direction of the justice, is limited in its exercise by him in his individual capacity as such justice. Besides we think to uphold such a contention would be productive of incalculable mischief and chaos in the administration of justice. Moreover, we find nothing in the statute that countenances the construction contended for.

The legislative intent was not to confer the powers designated by the statute upon the individual, independent of the judicial office with which he is clothed, but, clearly, upon the judicial office, irrespective of the individual invested therewith.

The statute provides that the application for a recount may be made to any justice of the Supreme Court. The words, "such justice," which appear in subsequent clauses of the act do not necessarily limit the carrying out, with effect, the provision of the act to the justice of the Supreme Court who in the first instance granted the order for a recount.

The provisions of the act may be effectuated by any justice of the Supreme Court, whenever the justice who originally made the order for a recount has become incapacitated, resigned or died.

It is the duty of the court to construe legislative acts so that they are workable, whenever that can be properly done, for the purpose of effectuating their intent and spirit.

In the present case the order for a recount was made by the justice presiding in the Hudson Circuit; he gave directions for making the recount; his term of office expired while the recount was going on, and thousands of ballots had already been counted with great labor, patience and expense. After an interval of two or three days the justice was reappointed, and heard counsel engaged in the recount on disputed ballots which had been laid aside by the board and referred to him, as justice, for decision. His decision resulted in favor of the applicant for a recount, and there-

upon he revoked the prosecutor's certificate of election and issued a certificate of election to the defendant Ackerman. The fact of a temporary vacancy in the office of justice of the Supreme Court, in the Hudson Circuit, according to the views above expressed, did not operate to nullify the recount, nor did it prevent the members of the board of election from pursuing the count, which had not yet been completed. It is not disputed that the board had full power to count the votes and refer all disputed ballots upon which they could not agree to the justice for decision. The justice who ordered the recount was reappointed, and, therefore, it cannot be justly said that the prosecutor was in any manner prejudiced by having the matter heard and determined by a justice who was a stranger to the earlier proceedings. Even if we adopt the view urged that the reappointment of the justice was the appointment of a new justice, as we regard the situation, it is of no importance whatever, for that may be truthfully said, in a certain sense, of a justice who is reappointed immediately upon the expiration of his term.

The reasons we have given lead to the result that the *certiorari* must be dismissed, with costs.